|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| CENTRAL DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| TIFFANY N. GOFF, | EDCV 16-535-AGR |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed this action on March 23, 2016. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On December 4, 2017, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for reconsideration of Dr. Aval's opinions.

# I.
## **PROCEDURAL BACKGROUND**

In October 2012, Goff filed applications for disability insurance benefits and supplemental security income, and alleged an onset date of December 30, 2008. Administrative Record ("AR") 13. The applications were denied initially and on reconsideration. AR 13, 78-79, 102-03. Goff requested a hearing before an Administrative Law Judge ("ALJ"). On August 27, 2014, the ALJ conducted a hearing at which Goff and a vocational expert testified. AR 31-60. On September 22, 2014, the ALJ issued a decision denying benefits. AR 10-26. On January 29, 2016, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.
## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Goff met the insured status requirements through June 30, 2011. AR 15. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Goff had the severe impairments of instability of the lateral collateral ligaments of the left ankle, status post Brostrom surgical repair; right ankle sprain with small effusion, status post multiple right arthroscopic knee surgeries; history of right knee post-surgical infection; osteoporosis of the right lower extremity; strain or sprain of the left knee; left knee patellofemoral pain syndrome; bilateral hip grater trochanteric bursitis; cervical and lumbosacral strain or sprain; and obesity. AR 15.

The ALJ found that Goff had the residual functional capacity ("RFC") to perform light work except that she can stand and walk four hours in an eight-hour workday; occasionally climb ramps and stairs, stoop and crouch; and occasionally use lower extremities for pushing or pulling. She cannot climb ladders, ropes and scaffolds;

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

balance, kneel or crawl; or use lower extremities for operation of foot controls. She should avoid concentrated exposure to cold and vibration, and avoid working around unprotected heavy machinery or unprotected heights. AR 18. She is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that she can perform, such as electronics worker, small products assembler and packing machine operator. AR 24-25.

### C. Treating Physician

Goff argues that the ALJ erred in discounting the opinion of her treating orthopedic surgeon, Dr. Aval, that she could sit for four hours, stand for one hour, walk for one hour, and therefore work for a total of six hours in an eight-hour workday.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When the treating physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to reject the opinion. The ALJ must provide a thorough summary of the conflicting clinical evidence, state his or her interpretation and make findings. *Orn*, 495 F.3d at 632.

Dr. Aval filled out a medical source statement dated July 23, 2014. AR 708-14. Dr. Aval opined that Goff could occasionally lift/carry up to 20 pounds; sit for four hours, stand for one hour and walk for one hour in an eight- hour workday; occasionally push/pull; frequently reach and handle; continuously finger and feel; frequently operate foot controls with the right foot but never with the left foot; and occasionally stoop and climb stairs and ramps, but never climb ladders and scaffolds, balance, kneel, crouch or crawl. AR 708-11. Goff could sort, handle and use paper files. AR 713.

In response to questions about the basis for the opinions, Dr. Aval's report refers to "attached" medical records and reports. AR 708-11, 713. However, the transmittal sheet indicates that only seven pages were submitted. AR 707. Nevertheless, the administrative record contains Dr. Aval's reports and treating records for the period November 24, 2009 through January 28, 2014. AR 245-64, 296, 397-468, 729-50. The record contains treating records from an orthopedic surgeon, Dr. Heinen, for the period December 19, 2012 through December 2013 (AR 565-604) and from another orthopedic surgeon, Dr. Baum, for the period May-August 2014. AR 475-79, 752-57. Dr. Baum's records in May 2014 indicate that Goff was transitioning her care. AR 476.

The ALJ gave little weight to Dr. Aval's opinion because it (1) was not supported by Dr. Aval's medical records, particularly those near the date of the medical source statement, (2) was prepared before Goff underwent a modified Brostrom procedure of the left ankle by Dr. Baum on August 7, 2014; and (3) was inconsistent with other medical records. AR 23, 752.

The ALJ's reasons for discounting Dr. Aval's limitations on sitting are supported by substantial evidence. The medical records of Dr. Aval and the other treating orthopedic surgeons do not support the sitting limitations. Goff testified that, during the day, her mother drops the children off at school and picks them up, and "I pretty much sit there." AR 42. Goff alleged that she cannot stand or walk for very long, cannot squat and cannot bend without worrying about falling over. AR 42-43. She spends the day sitting, standing up to stretch, and sitting again for seven to eight hours per day. AR 43, 45.

However, because the ALJ's rejection of Dr. Aval's other limitations are not supported by substantial evidence, the matter is remanded for reconsideration of Dr. Aval's opinions and further inquiry as appropriate at step five of the sequential analysis.On July 27, 2008, Goff slipped and fell on a recently mopped floor while

working as a waitress. She fell on both knees on the concrete floor. She returned to work after two weeks and was terminated on December 31, 2008. AR 255, 257.

Dr. Watkin was the Agreed Medical Examiner during the workers compensation proceedings and prepared reports dated May 10, 2011, September 4, 2012 (AR 266-94) and January 13, 2014 (AR 716-27).

Although Dr. Watkin's report dated May 10, 2011 is not in the record, it is the subject of Dr. Aval's report dated October 3, 2011 and is described in Dr. Watkin's subsequent report on September 4, 2012. Goff complained to Dr. Watkin about constant sharp pain in both knees. Dr. Watkin conducted a physical examination and reviewed radiographs. AR 245. In his May 10, 2011 report, Dr. Watkin recommended that Goff be provided with a gym membership and exercise every other day using an elliptical machine and stationary bicycle as well as leg weights for extension. AR 246. In Dr. Aval's report dated October 4, 2011, Dr. Aval agreed with this recommendation. AR 421. Dr. Aval's opined that the "giving out" symptoms of the right knee was from quadriceps weakness. The MRI of the right knee on July 27, 2011 indicated healthy menisci and ACL, and no structural damage or new tears. There was some inflammation in the area of the patellar tendon, which explained tenderness over the anterior aspect of the right knee. AR 424. Goff was using a cane for support as needed. AR 423. In his subsequent report on September 4, 2012, Dr. Watkin noted that Goff had not complained of pain in her ankles during the examination on May 10, 2011. AR 291. Based on his review of the treating medical records, prior to April 1, 2012 the ankles were not a source of significant pain and were not the focus of treatment.[2] AR 293.

---

[2] Because Goff filed her applications in October 2012, the court will not further detail the findings of Dr. Aval prior to May 2011 except to note that, in the August 2009 – October 2010 time frame, Goff had two surgeries on the right knee and had to use two crutches and a knee immobilizer to ambulate. *E.g.,* AR 249, 251, 256, 260, 276, 453-54, 457, 465, 467.

6

On September 4, 2012, Goff complained to Dr. Watkin of pain in both knees and ankles, made worse with squatting, climbing, kneeling, and prolonged standing and walking.[3] AR 267. She reported no difficulty with communications by computer, phone or writing; no difficulty with hand activities; and no difficulty reclining. She reported some difficulty sitting, walking or standing for 30 minutes. AR 268.

Dr. Watkin observed atrophy of the right thigh and calf secondary to disuse, and noted that previous x-rays had indicated disuse osteoporosis. Dr. Watkin recommended surgery on the right knee. Goff described minimal pain of the right ankle and Dr. Watkin did not recommend treatment at that time. Dr. Watkin observed that an MRI of the left ankle indicated anterior talofibular ligament rupture. However, he recommended surgery on the right knee before proceeding with surgery on the left ankle. AR 292. After review of Dr. Watkin's report, Dr. Aval referred Goff to Dr. Heinen for consultation on the recommended right knee surgery. AR 402.

Dr. Aval's treatment notes are consistent with Dr. Watkins' observations. On October 4, 2011, Dr. Aval noted tenderness to palpation over the right quadriceps with a 5 cm "knot," weakness, atrophy and antalgic gait. AR 419. On February 28, 2012, Dr. Aval noted Goff had no muscle spasms in the lower back and straight leg raises were negative. Her left ankle was normal. However, Goff had crepitus in both knees and tenderness in the right ankle. Dr. Aval agreed with Dr. Baker's recommendation for a diligent long-term exercise program. AR 416-17. On April 1, 2012, Goff reported that her right knee gave out while she was standing and taking off her shoes. Goff lost her balance, rolled her left ankle, strained the right ankle and aggravated both knees. Since the fall, Goff reported having trouble sitting, getting up from a seated position and leaning forward. AR 413. Dr. Aval noted pain in the lumbar spine with flexion/

---

[3] Dr. Watkin noted that Goff had not previously complained of pain in her ankles during the examination on May 10, 2011. AR 266, 291.

7

extension, pain in both knees with range of motion and swelling of the right ankle. X-rays showed no fractures or dislocations. AR 414. On May 8, 2012, Goff reported that her low back pain was off and on. There was effusion and crepitus in both knees, and swelling of the right ankle. AR 410. On September 21, 2012, Goff reported that her left ankle popped and made a grinding/tearing sound when she got up from a chair. The pain radiated up to her left shin and knee. She used an ankle brace for support. AR 404. On examination, Goff had no tenderness in the hips or right ankle. There was tenderness in both knees with a positive grind test of the right knee. The left ankle had moderate swelling and weakness of 4/5. AR 405. On October 30, 2012, Goff reported that her left ankle gave out when she was standing, and she rolled her left ankle. AR 400. Both knees showed tenderness and effusion. The left ankle was tender with swelling. AR 401. Dr. Aval noted Goff was awaiting ankle braces that were recently authorized and should prevent falls such as the ones she had experienced. AR 402.

Beginning in December 2012, Goff reported occasional or intermittent low back pain. AR 397, 729, 735. She had tenderness to palpation on her low back, hips, knees and ankles. AR 730, 733, 740, 744. By June 2013, Goff wore a knee and ankle brace. AR 735, 747. Goff was advised to continue a daily home exercise program for her back, hips, knees and ankles. AR 737. On December 23, 2013, Goff reported to Dr. Heinen that her right knee gave out one month ago. She rolled her right ankle, which resulted in bruising and swelling. She reported pain with walking. Dr. Heinen noted minimal swelling of the right knee, tenderness over both knees and right quadriceps atrophy. Strength was 4-/5 in the right knee and 4/5 in the left knee. An MRI of the right knee in September 2013 indicated a Baker's cyst and progression of chondromalacia and cartilage loss at the medial femoral condyle but no tears or effusion. An MRI of the left knee indicated minimal effusion and minimal chondromalacia involving the medial facet of the PF articulation cartilage. AR 566, 600-03. Dr. Heinen ordered a medial unloader brace. AR 567.

Dr. Watkin's report dated January 13, 2014 indicated that Goff complained of constant sharp pain in both knees and ankles, made worse with walking, standing and bending. AR 717. She reported no difficulty with sitting for 30 minutes or flying, and some difficulty walking for 30 minutes. AR 718. Dr. Watkin noted subluxation of the right patella with flexion of the knee; antalgic gait favoring the right knee; pain with heel and toe walking; some thickening of the suprapatellar pouch with no evidence of fluid and positive drawer sign of the left knee; unchanged examination of the right ankle; and hypermobility of the lateral ligament and joint of the left ankle. Dr. Watkin noted that an MRI of the right knee indicated a Bakers cyst and progression of chondromalacia, and an MRI of the left knee indicated slight progression of chondromalacia. Dr. Watkin recommended repair of the lateral ligament of her left ankle and found that the recommendation of a cortisone injection in the right knee to be reasonable. AR 723-24.

On May 16, 2014, Dr. Baum noted normal gait and posture. Goff did not have tenderness to palpation, swelling or crepitus of the ankles. Motor strength was 5/5. The anterior drawer test was positive for the left ankle. AR 477. Dr. Baum noted that Goff's preexisting hyperlaxity of all joints makes the ankle more unstable. Dr. Baum opined that surgical correction to stabilize the lateral collateral ligaments would stabilize the ankle postoperatively. AR 478. On August 7, 2014, Dr. Baum performed the surgical procedure. AR 752. On August 11, 2014, four days after the surgical procedure, Goff had mild bruising and instability of the lateral collateral ligaments. A short leg cast was applied. AR 757.

The ALJ gave partial weight to the examining physician's opinion. AR 23. Dr. Bernabe diagnosed internal derangement of the right knee, patellofemoral instability of the right knee and left ankle sprain. AR 472-73. Dr. Bernabe did not have Goff's medical records which, as described above, contained reports of periodic falls due to one or the other knee giving out. AR 469. Dr. Aval's limitations on walking and standing are consistent with the longitudinal medical records.

**D.     Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Goff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 19.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ discounted Goff's statements as "not entirely credible" because the severity of her subjective allegations were not supported by the objective medical evidence. AR 19-22. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ is correct that the objective medical evidence does not support the severity of Goff's subjective allegations. However, the law does not permit the ALJ to rely solely on that basis.

**E.     Relief**

The decision whether to remand for further proceedings is within the discretion of the district court. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014). When there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1101. However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.*

Remand is appropriate because there are outstanding issues to be resolved before a determination can be made.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and this matter is remanded for reconsideration of Dr. Aval's opinions and further inquiry at step five of the sequential analysis.

DATED: December 14, 2017

ALICIA G. ROSENBERG
United States Magistrate Judge